J-S57016-19
J-S57017-19
J-S57018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 690 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
In the Court of Common Pleas of Luzerne County
Orphans' Court at No:  A-8672

| | | |
|---|---|---|
| IN THE INTEREST OF: J.N.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 691 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
In the Court of Common Pleas of Luzerne County
Orphans' Court at No:  A-8672

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 692 MDA 2019 |

Appeal from the Decree Entered March 28, 2019
In the Court of Common Pleas of Luzerne County
Orphans' Court at No:  A-8673

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 11, 2020**

In these related appeals, C.S. ("Father") and S.F. ("Mother") (collectively, "Appellants") appeal from the March 27, 2019 decrees in the Luzerne County Court of Common Pleas involuntarily terminating their parental rights to their son, J.N.S., born in January of 2016. Mother also appeals from the March 27, 2019 decree involuntarily terminating her parental rights to her older son, A.M.S., born in July of 2014.[1] Upon careful review, we affirm.

The certified record reveals that, in February of 2016, Luzerne County Children and Youth Services ("CYS") opened a case for in-home services for Appellants after receiving three referrals between January and February of 2016, that alleged concerns about Mother's ability to bond with her newborn, J.N.S., and that A.M.S. sustained a head injury and hand burns.[2] N.T., 8/23/18, at 23-24. On February 24, 2016, the juvenile court adjudicated J.N.S. and A.M.S. dependent. *Id.* at 27.

The court permitted the children to stay in the home. CYS developed a family service plan that required Appellants to participate in family education;

_____

[1] By separate decree on March 27, 2019, the orphans' court involuntarily terminated the parental rights of A.M.S.'s natural father, J.S., who did not appeal.

[2] Upon investigation of these and subsequent injuries sustained by A.M.S., they were deemed unfounded for child abuse. N.T., 8/23/18, at 25-27.

Mother to continue mental health treatment at Northeast Counseling; and for two adults to be present at all times around J.N.S. and A.M.S. *Id.* at 10, 12-13. Services for the family were closed in May of 2016, due to them living in an unidentified hotel and their whereabouts being unknown. *Id.* at 13-14.

In July of 2016, J.N.S. and A.M.S. were removed from Appellants and placed in shelter care after CYS received a report that A.M.S. was injured on his face and neck, and he was found wandering in the hallway at the hotel without supervision. *Id.* at 14-15. Appellants were required to participate in parenting education, supervised visitation, obtain mental health evaluations, and obtain safe and stable housing. *Id.* at 32, 34.

In July of 2017, Appellants moved to Scranton, in Lackawanna County, where they resided at the time of the subject proceeding. *Id.* at 35-36. As such, Appellants were referred to service providers in Lackawanna County in order to satisfy the family service plan. *Id.* at 36. However, supervised visitation occurred at CYS's office in Luzerne County. *Id.*

The juvenile court held permanency review hearings in February of 2017, August of 2017, and March of 2018. *Id.* at 15-17. On the last review date, the court found Appellants to have minimal compliance and minimal progress in their family service plan. *Id.*

On March 2, 2018, CYS filed involuntary termination petitions against Appellants pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). Hearings occurred on August 23, 2018, and December 14, 2018. J.N.S. and A.M.S.

were represented by guardian *ad litem*, Maria Turestsky, Esquire, during the proceeding.

J.N.S., then two years old, and A.M.S., then four years old, were in a pre-adoptive kinship home with their maternal great-grandparents. N.T., 12/14/18, at 45-46. They both have special needs. Specifically, J.N.S. and A.M.S. are nonverbal. *Id.* at 46. In addition, A.M.S. is under the care of a neurodevelopmental pediatrician. *Id.*

During the subject proceeding, Appellants were represented by the same counsel, and they personally appeared during the proceeding, but neither testified. CYS presented testimony from Brian Steve, CYS supervisor from March of 2016, to April of 2018; Katie Nese, CYS supervisor from April of 2018, through the time of the subject proceeding; Paul Dorang, case manager for Family Service Association; Theresa Winer, a former visitation coach for the parenting program at Concern, a foster care agency; Jennifer Hagen; CYS foster care caseworker; Sherry Smith, CYS social service aide; Patricia Kelly, executive director at Care Net Pregnancy Center; Raina Cole, director of intake services at Northeast Counseling Services; Lisa Gries, crisis intake worker at Scranton Counseling Center; and Jamie Stewart, CYS caseworker.[3]

---

[3] CYS also presented the testimony of Pauline Polny, the supervisor of a parenting education program through Catholic Social Services, with respect to the natural father of A.M.S. only, who has not filed an appeal.

J-S57016-19
J-S57017-19
J-S57018-19

On March 27, 2019, the orphans' court involuntarily terminated Appellants' parental rights to J.N.S. and Mother's parental rights to A.M.S. Appellants timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pennsylvania Rules of Appellate Procedure 1925(a)(2)(i) and (b).[4] The orphans' court filed a Rule 1925(a) opinion on June 12, 2019.

Appellants filed a single brief wherein they present the following issue for our review in these appeals:

A. Whether the [orphans'] court erred in terminating parental rights and/or abused its discretion as testimony offered did not establish by clear and convincing evidence the requirements of . . . 23 Pa.C.S. [§] 2511(a)(2), (5), (8) in that [Appellants] ha[ve] not caused [J.N.S. and A.M.S.] to be without essential parental care, control, or subsistence necessary because [they ha]ve engaged in court-ordered services that have remedied the circumstances that originally gave rise to [J.N.S. and A.M.S.]'s placement[?]

---

[4] Appellants' counsel failed to timely comply with multiple orders from this Court, which delayed the listing of these appeals for our review. Counsel failed to timely file docketing statements with this Court, and counsel subsequently failed to follow the order directing his compliance. Upon remand, the orphans' court determined that counsel had not abandoned Appellants. Counsel thereafter filed the required docketing statements, and this Court then issued a briefing schedule. Counsel failed to comply with the briefing schedule, and this Court again ordered counsel to file Appellants' brief by a date certain. Counsel complied by filing the brief at 690 MDA 2019, but he failed to file paper copies of Appellants' brief in the related appeals at 691 and 692 MDA 2019. This Court then issued a total of three orders directing counsel to file the requisite paper copies of the brief. Counsel complied with the third and final order. Finally, Appellants' counsel caused delay in this Court's review by failing to follow the procedure in the Luzerne County Court of Common Pleas for the notes of testimony to be transcribed for purposes of appeal. This resulted in another order from this Court requesting the transcripts.

- 5 -

Appellants' brief at 1 (unpaginated).

We review Appellants' issue according to the following standard.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of

Section 2511(a), as well as Section 2511(b), in order to affirm. ***See In re***

- 6 -

***B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record supports the decrees pursuant to Section 2511(a)(2) and (b), which provide as follows.[5]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

This Court has explained that the moving party must produce clear and convincing evidence with respect to the following elements to terminate

---

[5] Based on this disposition, to the extent Appellants argue that the orphans' court abused its discretion in terminating their parental rights pursuant to Section 2511(a)(5) and (8), we need not review those sections.

parental rights pursuant to Section 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Pursuant to Section 2511(a)(2), parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 340 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* Further, the grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *Id.* at 337.

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child. *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention

to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

In this case, we do not review the decrees pursuant to Section 2511(b) because Appellants do not raise any issue regarding it in the statement of questions involved in their brief. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (stating, "it is well-settled that issues not included in an appellant's statement of questions involved . . . [is] waived.") (citing *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved. . . .").

Turning to our review of the decrees pursuant to Section 2511(a)(2), Appellants argue that CYS failed to satisfy its burden of proof. Specifically, Appellants contend that they complied with their requisite services. We disagree.

The orphans' court found, "Given the overwhelming evidence and testimony, it is clear that [Appellants] have received and/or have been offered extensive services over the years and they failed to complete the services or

even benefit from the services. At this juncture, [J.N.S.'s and A.M.S.'s] right to have proper parenting and fulfillment of their potential in a permanent, healthy, safe environment outweighs [Appellants'] interests. *In re J.A.S., Jr.*, 820 A.2d 774[, 782] (Pa. Super. 2003)." Orphans' Court Opinion, 6/12/19, at 15-16 (internal citation omitted). Specifically, the court found that Appellants failed to complete and benefit from the mental health and parenting education requirements. The testimonial evidence supports the court's findings.

Raina Cole, the director of intake services at Northeast Counseling Services, testified that CYS referred Appellants to her agency on September 27, 2016. N.T., 12/14/18, at 14. She testified that Father failed to attend three scheduled intake appointments; therefore, the agency closed Father's case in December of 2016. *Id.*

Ms. Cole testified that Mother attended her intake assessment and a subsequent psychiatric evaluation. N.T., 12/14/18, at 15. The agency diagnosed Mother with adjustment disorder with mixed anxiety and depressed moods, and the agency recommended that she receive outpatient services. *Id.* Ms. Cole testified that the agency prescribed medication for Mother, and that Mother attended a counseling session with the agency on January 16, 2017. *Id.* at 16. The agency scheduled six more outpatient counseling sessions, but Mother attended none of them. *Id.* at 17. Therefore, the agency closed Mother's case in May of 2017.

Lisa Gries, the crisis intake worker from Scranton Counseling Center, testified that she met Mother on July 7, 2017, due to a referral by CYS. N.T., 12/14/18, at 21. Ms. Gries testified that the agency diagnosed Mother with depressive disorder and recommended that she participate in outpatient services. *Id.* at 23-24. Between October of 2017, through November of 2017, the agency scheduled three more outpatient sessions, but Mother canceled all of them. *Id.* at 24-25. Mother attended an outpatient session on December 7, 2017, at which time the agency prescribed medication. *Id.* at 25. The agency scheduled two outpatient sessions for Mother in January of 2018, but she canceled them. *Id.* at 26. Therefore, the agency closed Mother's case in March of 2018. *Id.*

With respect to parenting education, Paul Dorang, the case manager with Families Service Association, testified that CYS referred Appellants to the agency in August of 2016. N.T., 8/23/18, at 62. Mr. Dorang testified that he worked with Appellants to follow through with their mental health requirement, to understand how their "unhealthy" relationship affected J.N.S. and A.M.S.,[6] and to develop parenting skills. *Id.* at 63. He explained that

_____

[6] Mr. Dorang explained, "the relationship between . . . [M]other and [F]ather was bad. It was very unhealthy to the point that . . . [F]ather showed many signs of being possessive over [Mother] and power and control." N.T., 8/23/18, at 63-64. He testified that he observed during supervised visits that Father "would frequently belittle mom, yell at her, rip her phone out of her hands if she was texting somebody that he didn't approve of. Sometimes we'd have to intervene in a visit to cool them down because [Father] would become fixated on certain things that mom would do." *Id.* at 64.

this included observing the visits between Appellants and J.N.S. and A.M.S. at the CYS office, as well as meeting with Appellants for individual sessions. *Id.* at 64. Mr. Dorang testified that Appellants' compliance with the program was poor insofar as they had three unexcused absences. *Id.* at 65. Mr. Dorang testified that he closed Appellant's case on April 19, 2017, for lack of progress, and their unexcused absences. *Id.*

Patricia Kelly, the executive director at CareNet Pregnancy Center in Scranton, testified that, in May of 2017, she opened a case for parenting education for Appellants. N.T., 8/23/18, at 107. Ms. Kelly testified that Appellants were consistent with weekly appointments through July of 2017. *Id.* at 107-108. Thereafter, Appellants became inconsistent in attending their parenting education sessions. The last session they attended was in October of 2017. *Id.* at 108. Ms. Kelly testified that Appellants did not contact the agency again until February of 2018, at which point she scheduled an appointment for March 5, 2018, but Appellants did not show for the appointment. *Id.* at 110-111. As such, Ms. Kelly testified that she has had no contact with Appellants since February of 2018. *Id.* at 111. Ms. Kelly stated that, when they stopped attending the parenting sessions, Appellants were still in need of parenting services. *Id.* at 115.

Sherry Smith, the CYS social service aide, testified that she supervised visits between Appellants and J.N.S. and A.M.S. starting in August of 2016.

N.T., 8/23/18, at 94. She testified that Appellants "missed many visits. There were many cancellations [by Appellants]." *Id.*

Theresa Winer, a former visitation coach for the parenting program at Concern, a foster care agency, testified that she worked with Appellants from May 17, 2017, through July 7, 2017. N.T., 8/23/18, at 82. She testified that Appellants "attended approximately half of their [supervised] visits." *Id.* at 83. In total, Ms. Winer testified that she had seven sessions with Appellants. *Id.* at 85. Ms. Winer testified that she discharged Appellants from the parenting program because of their "inconsistency in attending visits." *Id.* at 83.

Finally, Brian Steve, the CYS supervisor, from March of 2016, to April of 2018, testified that between January of 2017, to March of 2018, Mother had fifty-four visits scheduled with A.M.S., and she attended eight. N.T., 8/23/18, at 18. During that same period, Father and Mother had fifty-eight visits scheduled with J.N.S., and they attended nineteen. *Id.* Mr. Steve testified that both Luzerne and Lackawanna County jointly provided bus passes for transportation. *Id.* Katie Nese became the CYS supervisor in April of 2018. She testified that Appellants remain inconsistent in attending supervised visitation. *Id.* at 47. Specifically, Ms. Nese testified that between April of 2018, to one week before the subject proceeding on August 23, 2018, Appellants had thirty-six scheduled visits, and they attended nine. *Id.* at 48.

The foregoing testimonial evidence supports the findings of the orphans' court. The court's conclusion that Appellants' conduct warranted termination of their parental rights under Section 2511(a)(2) is reasonable, and we discern no abuse of discretion. Indeed, the repeated and continued incapacity, neglect, or refusal of Appellants since 2016, has caused J.N.S. and A.M.S. to be without essential parental care, control or subsistence necessary for their physical or mental well-being. Further, the conditions and causes of Appellants' incapacity, neglect, or refusal cannot or will not be remedied by them. Accordingly, we affirm the decrees involuntarily terminating Mother's and Father' s parental rights to J.N.S. and Mother's parental rights to A.M.S.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/11/2020

- 14 -